## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH METZLER,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **NO.  15-910** |
| | |
| **KENNER CITY, ET AL.** | **SECTION: "E"** |
| **Defendants** | |

### <u>ORDER AND REASONS</u>

The issue before the Court is whether the Defendants Mike Yenni and the City of Kenner are entitled to summary judgment on the Plaintiff's claims under 42 U.S.C. § 1983 for violations of the Plaintiff's First and Fourteenth Amendment rights.

The Court's August 25, 2016 Order dismissed with prejudice the Plaintiff's claims under 42 U.S.C. § 1983 against Defendants Aimee Vallot, Richard Walther, and former Mayor Mike Yenni (hereinafter referred to as "Mayor Yenni") in their official capacities.[1] The Court also dismissed with prejudice Plaintiff's claims against the City of Kenner for vicarious liability under 42 U.S.C. § 1983.[2] The only claims remaining are those against Mayor Yenni in his individual capacity for alleged violations of the Plaintiff's First and Fourteenth Amendment rights, and those against the City of Kenner.

Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) and, alternatively, a motion for summary judgment.[3] Because both parties presented matters outside the

---

[1] R. Doc. 67. There are no remaining claims against Defendants Aimee Vallot and Richard Walther, as they were sued in their official capacities only. R. Doc. 61. Defendant Mayor Yenni, however, was sued in both his official and individual capacities. Plaintiff's claims against him individually are addressed in this Order.
[2] R. Doc. 67.
[3] R. Doc. 43. Pursuant to the Court's July 19, 2016 Order, R. Doc. 60, the Plaintiff was granted leave to amend his complaint. R. Doc. 61. Thereafter, the Defendants reurged their motions. R. Doc. 62.

pleadings, the Court considers this motion as a motion for summary judgment.[4] Plaintiff Joseph Metzler opposes the motion.[5]

For the reasons stated herein, the motion for summary judgment is **GRANTED**.

<u>**FACTUAL & PROCEDURAL BACKGROUND**</u>

Plaintiff Joseph Metzler ("Plaintiff") filed a third amended complaint on July 29, 2016, alleging claims arising under 42 U.S.C. § 1983.[6] Plaintiff is a classified employee who works as an electrical inspector in the City of Kenner's Department of Inspections and Code Enforcement.[7] On December 2, 2007, Plaintiff was hired as an "Electrical Inspector II," working 30 hours per week at an hourly rate of $23.[8] Plaintiff alleges on March 24, 2014, he was wrongfully terminated by Aimee Vallot, Director of Inspections and Code Enforcement for the City of Kenner.[9] Plaintiff alleges his termination was in retaliation for exercising his First Amendment rights.[10] Plaintiff also alleges his termination was in violation of his right to due process under the Fourteenth Amendment because the investigation that led to his termination was a "sham."[11]

The parties agree that in October of 2011, the contract for the 33rd Street lift station project in Kenner was nearing completion.[12] When the Plaintiff inspected the contractor's work, he refused to approve the project because the electrical panels were below base

---

[4] Fed R. Civ. P. 12(d). The Plaintiff argues the Defendants waived their right to file a motion to dismiss by filing an answer, R. Doc. 9, to the Plaintiff's amended complaint, R. Doc. 5, before filing the motion to dismiss. R. Doc. 43. The Plaintiff, however, filed an additional amended complaint after the filing of the Defendants' answer, R. Doc. 61, negating this argument. In any event, the Court has considered the Defendant's motion under Rule 56, rendering the filing of an answer irrelevant.

[5] R. Doc. 64.

[6] R. Doc. 61.

[7] R. Doc. 43-30 at 1, ¶ 1; R. Doc. 51-39 at 1, ¶ 1.

[8] R. Doc. 61.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 24.

[12] R. Doc. 43-30 at 1, ¶ 2–3; R. Doc. 51-39 at 1, ¶ 2–3.

flood elevation.[13] After his refusal, the Plaintiff contends he was called into a meeting with Mayor Yenni and Michael Quigley, Chief Administrative Officer for the City of Kenner, when he was pressured to approve the lift station contrary to his professional opinion.[14] It is undisputed that the Plaintiff then contacted Jack Zewe ("Zewe"), a Kenner "watchdog" who is known for "researching, discovering, exposing, documenting and revealing issues of public concern" to alert him to the deficiencies in the lift station.[15] It is undisputed that Zewe, an electrical engineer, contacted Pratt Ready, Director of Public Works for the City of Kenner, requesting that the manufacturer install specific labels on the lift station equipment.[16] The parties agree that the deficiencies in the lift station were a matter of public concern, as evidenced by the publication of an editorial in *The Times-Picayune* newspaper.[17]

Approximately two years later, Plaintiff alerted Zewe that an employee of the Code Enforcement Department, Anna Gautreaux ("Gautreaux"), did not disclose a felony conviction on her job application and had been mishandling cash payments.[18] Zewe then wrote two letters to Mayor Yenni.[19] It is undisputed that in response to Zewe's letters and a letter from Councilman Gregory Carroll regarding the alleged mishandling of cash payments by Gautreaux, Mayor Yenni instructed the Kenner Police Department to conduct an investigation.[20] The parties agree Zewe informed Kenner Police Detective David Stromeyer that the Plaintiff might have information pertinent to the

---

[13] R. Doc. 43-30 at 1, ¶ 2–3; R. Doc. 51-39 at 1, ¶ 2–3.
[14] R. Doc. 61 at 5–6, ¶¶ 12–14.
[15] R. Doc. 56-38; R. Doc. 71.
[16] R. Doc. 56-38 at 2, ¶ 2; R. Doc. 71 at 1, ¶ 2; R. Doc. 56-5.
[17] R. Doc. 56-38 at 2, ¶ 6; R. Doc. 71 at 2, ¶ 6; R. Doc. 56-7.
[18] R. Doc. 43-30 at 1, ¶¶ 4–5; R. Doc. 51-39 at 1, ¶¶ 4–5; R. Doc. 43-3; R. Doc 59-8.
[19] R. Doc. 59-8; R. Doc. 43-3.
[20] R. Doc. 43-30 at 1–2, ¶¶ 5–9; R. Doc. 51-39 at 1–2, ¶¶ 5–9; R. Doc. 43-4; R. Doc. 43-5; R. Doc. 43-6.

investigation.[21] When Detective Stromeyer contacted the Plaintiff, it is undisputed that the Plaintiff "advised that he did not have any knowledge of any criminal activity within the Code Enforcement Office[,] . . . he did not want to get involved in any investigation[,] [and] . . . concluded by saying 'I have nothing to offer, thanks for calling' and proceeded to hang up."[22] The Plaintiff alleges he refused to provide information to Detective Stromeyer because he "fear[ed] reprisal by the Defendants."[23] The parties agree the Kenner Police Department concluded its investigation of Gautreaux and found no evidence of mishandling of cash payments.[24]

After Zewe's letters regarding Gautreaux were sent to Mayor Yenni, the parties agree that Keith Conley, Interim Director of Code Enforcement, retained an investigative agency to conduct surveillance on four city employees, including the Plaintiff.[25] It is undisputed that Conley opted to purchase only the surveillance report prepared with respect to the Plaintiff.[26] Conley's reason for purchasing only the Plaintiff's surveillance report, however, is disputed. The Plaintiff argues the purchase of his surveillance report demonstrates a retaliatory motive for his termination, but the Defendants contend the decision was made because only the Metzler report showed "possible job performance issues."[27]

On September 19, 2013, Robert Miles ("Miles"), the Plaintiff's uncle, appeared before the Kenner City Council and asserted that the Plaintiff was a victim of retaliation because of his refusal to approve the 33rd Street lift station project and his allegations that

---

[21] R. Doc. 43-30 at 2, ¶ 12; R. Doc. 51-39 at 2, ¶ 12; R. Doc. 43-6.
[22] R. Doc. 43-30 at 2, ¶ 12; R. Doc. 51-39 at 2, ¶ 12; R. Doc. 43-6.
[23] R. Doc. 61 at 8, ¶ 19.
[24] R. Doc. 43-30 at 4, ¶ 29–30; R. Doc. 51-39 at 4, ¶ 29–30.
[25] R. Doc. 56-38 at 3, ¶ 7; R. Doc. 71 at 2, ¶ 7.
[26] R. Doc. 56-38 at 3, ¶ 7; R. Doc. 71 at 2, ¶ 7; R. Doc. 59-9.
[27] R. Doc. 71 at 2, ¶ 7.

4

Gautreaux did not disclose she was a convicted felon on her employment application and that she was mishandling cash payments.[28] After Miles appeared before the City Council, the Plaintiff was sent a Notice of Charge and Disciplinary Conference, alleging the Plaintiff violated the "Productive Work Environment," "Truthfulness," and "False Information" sections of the City's policies, rules, and directives by reporting illegal or violative conduct of a City employee, but thereafter refusing to cooperate with the law enforcement officials investigating the matter.[29]

Throughout his tenure as an electrical inspector for the City, the Plaintiff was the subject of numerous driving complaints. It is undisputed that as of September 13, 2013, nine complaints had been lodged against him, seven of which were made by anonymous reporters.[30] In each instance, the parties agree Richard Chauvin, Safety Inspector for the Code Enforcement Department, investigated the complaint.[31] It is disputed, however, whether Chauvin's job description allowed him only to investigate the facts of each complaint and report his findings to his supervisor, or whether he was able to render conclusions with regard to whether disciplinary action against an employee is warranted.[32] After each complaint, Chauvin spoke with the Plaintiff, advised him to drive more carefully, and reported his findings to the Director of Code Enforcement or the Assistant Director of Code Enforcement.[33]

On September 26, 2013, Gloria Allen ("Allen"), a school crossing guard, filed a driving complaint with the Mayor's office, alleging the vehicle assigned to the Plaintiff

---

[28] R. Doc. 61 at 9.
[29] R. Doc. 59-10.
[30] R. Doc. 56-38 at 3, ¶ 12; R. Doc. 71 at 3, ¶ 12.
[31] R. Doc. 56-38 at 3, ¶ 13; R. Doc. 71 at 3, ¶ 13.
[32] R. Doc. 56-38 at 3, ¶ 13; R. Doc. 71 at 3, ¶ 13.
[33] *See* R. Docs. 59-14, 59-15, 59-16, 59-17, 59-18, 59-19, 59-20, 59-21.

"sped around another vehicle and through a stop sign in a school zone, almost striking her."[34] It is undisputed that Richard Chauvin investigated the matter, and after interviewing Allen, determined the incident could have been prevented and that both parties contributed to the incident.[35] At the time of this incident, Tamitha Shaw, then-Code Enforcement Department Director, was in the final days of employment, and was replaced on an interim basis by City Attorney Keith Conley.[36] On October 30, 2013, Conley issued a Notice of Charge and Disciplinary Hearing to the Plaintiff, alleging the Plaintiff violated City of Kenner Employee Handbook rules and the City of Kenner Employee Safety Manual regarding the September 26, 2013 incident, and Conley conducted a hearing on these charges on November 5, 2013.[37] At the November 5 hearing, the Plaintiff and Allen gave differing reports of the September 26 event.[38] Interim Director Conley subsequently issued another Notice Charge and Disciplinary Hearing to the Plaintiff on December 29, 2013, alleging the Plaintiff was untruthful at the hearing about his involvement in the September 26 incident, which was a violation of the City of Kenner Employee Handbook rules on "truthfulness" and providing "false information."[39] On January 7, 2014, Aimee Vallot, the newly hired Director of Code Enforcement, conducted a disciplinary hearing regarding the December 29 charges of "truthfulness" and providing "false information."[40]

In February 2014, Richard Walther became Assistant Director of Code Enforcement, and Vallot assigned him to further investigate the September 26 incident

---

[34] R. Doc. 43-30 at 2, ¶ 15; R. Doc. 51-39 at 2, ¶ 15.
[35] R. Doc. 43-30 at 3, ¶ 18; R. Doc. 51-39 at 3, ¶ 18.
[36] R. Doc. 43-30 at 3, ¶ 19–22; R. Doc. 51-39 at 3, ¶ 19–22.
[37] R. Doc. 43-30 at 3, ¶ 24–26; R. Doc. 51-39 at 4, ¶ 24–26.
[38] R. Doc. 56-38 at 4, ¶ 19; R. Doc. 71 at 4, ¶ 19.
[39] R. Doc. 56-38 at 4, ¶ 19; R. Doc. 71 at 4, ¶ 19; R. Doc. 59-24.
[40] R. Doc. 56-38 at 5, ¶ 21; R. Doc. 71 at 5, ¶ 21.

involving the Plaintiff.[41] Vallot testified she ordered a new investigation to give the case a "fresh set of eyes."[42] It is disputed whether the investigation was completed at the conclusion of Chauvin's involvement, or whether the investigation remained open.[43] As part of his investigation, Walther interviewed Allen and discussed the Plaintiff's history of driving complaints with Richard Chauvin.[44] When his investigation was complete, Walther wrote a report dated February 27, 2014, which prompted Vallot to issue a second Notice of Charge and Disciplinary Conference.[45] A hearing on these charges was held on March 21, 2014.[46]

At the March 21 hearing, the Plaintiff brought no witnesses and produced no evidence.[47] It is undisputed that Vallot terminated the Plaintiff.[48] The Plaintiff received a letter of termination on March 25, 2014 signed by Walther because Vallot was out of town.[49] The letter stated the Plaintiff was terminated because of violations of the City of Kenner Handbook and Safety Manual arising from the September 26, 2016 incident and the multitude of driving complaints against him.[50] It is disputed, however, whether Vallot made the decision to terminate the Plaintiff based on the facts presented at the hearing, or whether the Plaintiff's termination was a foregone conclusion, as the result of Vallot, Walther, and Mayor Yenni's conspiracy against the Plaintiff.

---

[41] R. Doc. 43-30 at 5, ¶ 36−38; R. Doc. 51-39 at 5, ¶ 36−38.
[42] R. Doc. 43-18 at 3.
[43] R. Doc. 43-30 at 5, ¶ 37; R. Doc. 51-39 at 5, ¶ 37.
[44] R. Doc. 43-30 at 5, ¶ 40−41; R. Doc. 51-39 at 5, ¶ 40−41.
[45] R. Doc. 43-30 at 5, ¶ 43; R. Doc. 51-39 at 5, ¶ 43; R. Doc. 43-12. The notice was issued on March 17, 2014 and set a hearing date of March 21, 2014. R. Doc. 59-25.
[46] R. Doc. 43-30 at 5, ¶ 45; R. Doc. 51-39 at 5, ¶ 45.
[47] R. Doc. 43-30 at 5, ¶ 45; R. Doc. 51-39 at 5, ¶ 45. The Plaintiff attempted to present his attorney as a witness, but was informed that attorneys were not allowed at the hearing. The Plaintiff's attorney was asked to leave the hearing.
[48] R. Doc. 43-30 at 6, ¶ 54; R. Doc. 51-39 at 6, ¶ 54.
[49] R. Doc. 43-30 at 6, ¶ 55; R. Doc. 51-39 at 6, ¶ 55.
[50] R. Doc. 43-16.

The Plaintiff appealed his termination to the Kenner Civil Service Board.[51] Walther, Vallot, Yenni, and the Plaintiff testified at the hearing. Both Walther and Vallot testified they did not discuss the Plaintiff's termination with Mayor Yenni.[52] Mayor Yenni testified he did not have any conversations with Vallot or Walther about terminating the Plaintiff, and he did not find out about the Plaintiff's termination under after Vallot made the decision.[53] The Board overturned Vallot's decision and reinstated the Plaintiff on October 20, 2014.[54] The Board reasoned that based on the "testimony and evidence presented, as well as the entire hearing record, . . . the City has not borne its burden of proof and that disciplinary action [against the Plaintiff] was arbitrary and further, was undertaken without reasonable cause."[55]

The Plaintiff subsequently filed a Complaint in this Court on March 24, 2015.[56] Pursuant to 42 U.S.C. § 1983, the Plaintiff seeks damages for alleged violations of his First and Fourteenth Amendment rights.[57] On June 23, 2016, the Defendants filed a motion to dismiss for failure to state a claim, or in the alternative, a motion for summary judgment.[58] On July 19, 2016, this Court dismissed the Plaintiff's claims for punitive damages against the City of Kenner and granted the Plaintiff's request to amend his complaint.[59] On August 25, 2016, the Court dismissed with prejudice Plaintiff's claims against Mayor Yenni, Aimee Vallot, and Richard Walther in their official capacities and Plaintiff's claims against the City of Kenner based on its vicarious liability for the actions

---

[51] R. Doc. 43-30 at 6, ¶ 56; R. Doc. 51-39 at 6, ¶ 56.
[52] R. Doc. 43-30 at 6, ¶ 57–58; R. Doc. 51-39 at 6, ¶ 57–58; R. Doc. 43-17; R. Doc. 43-19.
[53] R. Doc. 43-24.
[54] R. Doc. 43-30 at 10, ¶ 84; R. Doc. 51-39 at 9, ¶ 84.
[55] R. Doc. 59-35.
[56] R. Doc. 1.
[57] R. Doc. 61 at 21–24.
[58] R. Doc. 43.
[59] R. Doc. 60. The Plaintiff filed his Third Amended Complaint on July 29, 2016. R. Doc. 61.

of Aimee Vallot, Richard Walther, and Mayor Yenni.[60] The Section 1983 claims for retaliatory termination in violation of the Plaintiff's First and Fourteenth Amendment rights remain against Mayor Yenni in his individual capacity and the City of Kenner.

The Defendants filed a motion to dismiss for failure to state a claim, and in the alternative, a Rule 56 motion for summary judgment.[61] Both the Plaintiff in his oppositions and Defendants in their motion and response to the Plaintiff's statement of contested facts attached summary judgment evidence. As a result, the Court considers the motion as one for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[62] "An issue is material if its resolution could affect the outcome of the action."[63] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[64] All reasonable inferences are drawn in favor of the nonmoving party.[65] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[60] R. Doc. 67.

[61] R. Doc. 43-1.

[62] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[63] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[64] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[65] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[66]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[67] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[68]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[69] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled

---

[66] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[67] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[68] *Celotex*, 477 U.S. at 322–24.

[69] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

to summary judgment as a matter of law.[70] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[71] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[72] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[73] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[74]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim.

---

[70] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[71] *Celotex*, 477 U.S. at 332–33.
[72] *Id.*
[73] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[74] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[75]

## LAW AND ANALYSIS

The Plaintiff has asserted claims under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights against Mayor Yenni in his individual capacity and the City of Kenner.[76] To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) that the person engaged in the conduct complained of was acting under color of state law; and (2) that the alleged conduct deprived plaintiff of rights, privileges, or immunities guaranteed under the U.S. Constitution or laws of the United States.[77]  The parties agree that Mayor Yenni in his individual capacity and the City of Kenner are "persons" for the purposes of Section 1983, and that they were acting under color of state law.[78]  As a result, the Court's remaining analysis focuses solely on whether the alleged conduct of Mayor Yenni and the City of Kenner deprived Plaintiff of his rights under the U.S. Constitution or the laws of the United States.

I.    Did Mayor Yenni's Conduct in His Individual Capacity Deprive the Plaintiff of a Constitutionally Protected Right?

The Plaintiff asserts claims against Mayor Yenni in his individual capacity on the ground that Mayor Yenni instructed Aimee Vallot to terminate the Plaintiff's employment in retaliation for his exercising his rights to free speech and association.[79]  The Plaintiff also alleges that, upon the recommendation or approval of Mayor Yenni, Vallot and

---

[75] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[76] R. Doc. 61.

[77] *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by, *Daniels v. Williams*, 474 U.S. 327 (1986).

[78] R. Doc. 43-1 at 14.

[79] R. Doc. 61.

Walther conducted a "sham" investigation into the allegations against the Plaintiff, which violated the Plaintiff's Fourteenth Amendment due process rights.[80] The Plaintiff asserts there are material facts in dispute with respect to whether the investigation was a sham and whether his termination was in retaliation for exercising his rights to free speech and association. To state a cause of action under Section 1983 against Mayor Yenni individually, however, the Plaintiff must establish that *Mayor Yenni* was personally involved in the constitutional violations or that *Mayor Yenni's* conduct was "causally connected" to the alleged constitutional violations.[81] "Only direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under [Section] 1983."[82] As the mayor of the City of Kenner, Mayor Yenni was undoubtedly a supervisory official.[83] Supervisory officials may be held liable in their individual capacities under Section 1983 only if they (1) affirmatively participate in the acts that cause the constitutional deprivation, or (2) implement unconstitutional policies that causally result in the constitutional injury.[84]

The Defendants, as movants on summary judgment, have the burden to produce evidence that negates an essential element of the Plaintiff's claim or demonstrate there is no evidence in the record to establish an essential element of the Plaintiff's claim. The Defendants argue they have submitted sufficient evidence to negate an essential element of the Plaintiff's claim—that Mayor Yenni's personal conduct deprived the Plaintiff of

---

[80] R. Doc. 61 at 24.

[81] *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

[82] *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (quoting *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999)).

[83] The City Charter allows the mayor to "authorize department heads or administrative officers to appoint and remove subordinates in their departments or under their supervision." R. Doc. 72-2 at 2.

[84] *Valentine v. Jones*, 566 F. App'x 291, 294 (5th Cir. 2014) (quoting *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)). The Plaintiff does not allege that Mayor Yenni implemented an unconstitutional policy that caused him constitutional injury.

constitutionally protected rights or that Mayor Yenni's conduct was causally connected to the alleged constitutional violations. To support their position that Mayor Yenni had no involvement in the Plaintiff's investigation or termination, the Defendants submit multiple excerpts of testimony from the Plaintiff's hearing before the Kenner Civil Service Board.

First, Richard Walther, Assistant Director of Code Enforcement, testified "Ms. Vallot" was the "ultimate decision maker" in the decision of whether to terminate the Plaintiff.[85] When asked whether he "receive[d] any calls or [had] any discussions with anyone in the city administration[,] . . . includ[ing] the mayor," Walther testified he had not.[86] Walther also testified that no one at any time told him he or she wanted the Plaintiff terminated.[87]

Second, Aimee Vallot, Director of Code Enforcement, answered negatively when asked whether "anyone at any time in the city administration . . . [told her] that they wanted Mr. Metzler terminated."[88] Vallot also testified that no pressure was put on her to terminate the Plaintiff.[89] In fact, when asked who made the decision to terminate the Plaintiff, she responded the decision was "mine and mine alone."[90] Finally, when told that "Mr. Metzler testified that there was [a] conspiracy and . . . you just 'rolled with it,'" and asked whether she terminated the Plaintiff with any "preconceived notion about this case," Vallot answered "[n]o, sir."[91] With respect to the Plaintiff's allegation that his Fourteenth Amendment right to due process was violated because Mayor Yenni ordered

---

[85] R. Doc. 43-15 at 3.
[86] R. Doc. 43-17 at 1–2.
[87] *Id.* at 2.
[88] R. Doc. 43-19 at 2.
[89] *Id.*
[90] R. Doc. 43-21 at 6.
[91] R. Doc. 43-19 at 2.

Vallot and Walther to conduct a sham hearing, the Defendants submit Vallot's testimony. When asked why she ordered Walther to conduct a new investigation, Vallot testified she "was coming in . . . midstream" and felt it necessary to give "a fresh set of eyes on the case."[92]

Third, the Defendants submit Mayor Yenni's testimony from the Plaintiff's civil service hearing. In his testimony, Mayor Yenni denied having "any conversations with Aimee Vallot or Rick Walther regarding . . . terminating Joey Metzler."[93] Mayor Yenni also testified he was not notified about the termination until after it happened.[94] Finally, when asked whether he "attempt[ed] to influence [Vallot or Walther] in any way," Mayor Yenni responded "[n]ot at all."[95]

Finally, the Defendants submit the Plaintiff's own testimony. At the civil service hearing, the Plaintiff was asked whether he had "any evidence other than [his] own speculation that someone told Ms. Vallot, instructed Ms. Vallot, or enlisted Ms. Vallot in a conspiracy."[96] The Plaintiff answers "[n]o, no other than hearsay."[97]

The Defendants contend, therefore, they have submitted sufficient summary judgment evidence to negate an essential element of the Plaintiff's cause of action by showing that Mayor Yenni did not personally participate in the investigation into the Plaintiff's alleged violations or in the Plaintiff's termination and that his conduct was not causally connected to the alleged constitutional violations. The Court finds the Defendants met their burden as movants on summary judgment.

---

[92] R. Doc. 43-18 at 3.
[93] R. Doc. 43-24 at 1.
[94] *Id.* at 2.
[95] *Id.* at 3.
[96] R. Doc. 43-28 at 2.
[97] *Id.*

The Plaintiff, as nonmovant on summary judgment who will bear the burden of proof at trial, has the burden of mustering sufficient summary judgment evidence to show there are disputed issues of fact with respect to whether Mayor Yenni's conduct deprived the Plaintiff of a constitutionally protected right. The Plaintiff attempts to show his termination was a foregone conclusion, because Mayor Yenni instructed Vallot to conduct a second, "sham" hearing and to ultimately terminate the Plaintiff.[98] In support of his position, the Plaintiff submits his own affidavit, in which he states he met with Mayor Yenni in October of 2011, and the Mayor "attempted to get [the Plaintiff] to change [his] professional opinion and sign off on the [lift station] project."[99] This statement, however, fails to connect Mayor Yenni to the investigation into the Plaintiff's alleged violations or to the Plaintiff's termination, both of which happened nearly three years later. The Plaintiff also submits his termination letter, which details the reasons for his termination, in support of his position that City leaders conspired against him.[100] The letter was signed by Rick Walther, Assistant Director of Code Enforcement, at the direction of Vallot and copied Vallot, Director of Code Enforcement, Maria Leon, Assistant Director of Personnel, Wendy Lorenz, Director of Civil Service, and Natalie Newton, Deputy CAO.[101] Mayor Yenni's name appears nowhere on the document as a sender or recipient.[102] The only evidence the Plaintiff submits to connect Mayor Yenni to his termination is a sworn declaration from Kent Denapolis, former city council member of the City of Kenner, in which he states he had a conversation with Aimee Vallot after the Plaintiff's termination, and Vallot said the Plaintiff's firing was "not [her] decision" and was "out of [her]

---

[98] R. Doc. 61 at 24.
[99] R. Doc. 59-5 at 2.
[100] R. Doc. 59-34.
[101] *Id.*
[102] *Id.*

hands."[103] This evidence, however, is not competent summary judgment evidence, as the statements attributed to Aimee Vallot are inadmissible hearsay.[104] As such, the Court cannot consider this evidence on summary judgment on a claim against Mayor Yenni.[105]

The Plaintiff offers no summary judgment evidence to show a disputed issue of fact with respect to whether Mayor Yenni committed any wrongful acts that were directly involved with or causally connected to the Plaintiff's constitutional deprivations of his First Amendment or Fourteenth Amendment rights. As a result, the Plaintiff has failed to meet his burden on summary judgment. There are no disputed issues of material fact, and the Defendants are entitled to judgment as a matter of law because the Plaintiff cannot establish an essential element of his claims against Mayor Yenni individually. Accordingly, the Defendants' motion for summary judgment with respect to the claims against Mayor Yenni in his individual capacity is granted.[106]

II.  Is the City of Kenner Liable Under Section 1983?

The Plaintiff sued the City of Kenner under 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights.[107] A plaintiff may bring a Section 1983 claim against a municipality when "official policy or governmental custom is responsible for a

---

[103] R. Doc. 59-36.

[104] *See* Fed. R. Civ. P. 56(e)(1); Fed. R. Evid. 801.

[105] *U.S. v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008) (finding the district court erred when using the affidavit to support summary judgment because "the affidavit clearly contained hearsay, was not based on personal knowledge, and, under normal summary judgment procedures, is not admissible"); *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008) ("'When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment.'").

[106] Because the Court finds there are no disputed issues of fact with respect to whether Mayor Yenni's conduct deprived the Plaintiff of his constitutionally protected rights, the Court need not discuss whether the Plaintiff engaged in speech protected by the First Amendment or whether he was deprived of his due process rights. Neither does the Court need to address the applicability of the qualified immunity doctrine to Mayor Yenni.

[107] R. Doc. 61.

deprivation of rights protected by the Constitution."[108] Ordinarily, a plaintiff must identify an official policy or custom giving rise to his constitutional claim.[109] In a case such as this one in which the Plaintiff alleges no official policy of the City, the Plaintiff may establish the City's Section 1983 liability by showing a single decision by an official with "final policy making authority."[110] The Plaintiff alleges Mayor Yenni made two decisions, ordering the "sham" investigation and ordering the termination of the Plaintiff. As discussed above, the Plaintiff offers no summary judgment evidence to show that Mayor Yenni made any decisions regarding either the investigation or the termination.

Even if the Plaintiff had established a disputed issue of fact with respect to whether Mayor Yenni was personally involved with or causally connected to the Plaintiff's termination, the City is still not liable, as Mayor Yenni is not the final policymaker.

"[L]iability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."[111] "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."[112] When deciding whether a single decision by an official constitutes an official policy, the Court must determine whether the official is the final policymaker, which is an issue of state law.[113]

---

[108] *Bennet v. Slidell*, 728 F.2d 762, 766 (5th Cir. 1984) (citing *Monell v. Dept. of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1987) (holding that municipalities are "persons" for the purposes of Section 1983)).

[109] *Monell*, 436 U.S. at 694; *Canton v. Harris*, 489 U.S. 378, 389 (1989).

[110] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

[111] *Pembaur*, at 481.

[112] *Id.* at 481–82.

[113] *Advanced Tech. Bldg. Sols., LLC v. City of Jackson, Miss.*, 817 F.3d 163, 166 (5th Cir. 2016), *petition for cert. filed*, (U.S. Jun. 26, 2016) (No. 16-121) (citing *Jett*, 7 F.3d at 1245).

The Plaintiff names Mayor Yenni as the final policymaker with respect to the Plaintiff's termination.[114] The Defendants, however, contend that under the City of Kenner Charter, the Civil Service Board, not Mayor Yenni, is the final policymaker.[115] The parties do not dispute that the Plaintiff appealed his termination to the Kenner Civil Service Board.[116]

To recover, the Plaintiff must establish that Mayor Yenni has final policymaking authority as a matter of law.[117] The City, as movant on summary judgment, seeks to negate this essential element of the Plaintiff's claim by pointing to the City of Kenner Charter. The City Charter gives the mayor "the power to appoint and remove all non-elected City officials and employees, subject to the provisions of applicable state law and [the] Charter,"[118] but also provides that the Mayor's decisions are reviewable by the Kenner Civil Service Board.[119] The City Charter vests the Kenner Civil Service Board with the authority to provide for the procedure for "lay-offs, suspension, demotion, dismissal of employees," which includes holding public hearings in cases of demotion or dismissal of permanent employees.[120] "[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review."[121] An official's decisions are subject to meaningful administrative review when there exist "effective review procedures" that could prevent city "employees from wielding final responsibility."[122] To constitute meaningful review,

---

[114] R. Doc. 61.
[115] R. Doc. 62 at 6–8.
[116] R. Doc. 43-30 at 10, ¶ 84; R. Doc. 51-39 at 9, ¶ 84; R. Doc. 43-29.
[117] R. Doc. 62 at 5–9.
[118] R. Doc. 72-2 at 2.
[119] *Id.* at 3–4.
[120] R. Doc. 72-2 at 3.
[121] *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997).
[122] *Advanced Technology Building Solutions*, 817 F.3d at 166.

the reviewing administrative entity cannot merely "rubber stamp" the decisions of the city official.[123]

The City argues that Mayor Yenni is not a final policymaker, the Kenner Civil Service Board provides a meaningful review of Mayor Yenni's decisions, and it is entitled to judgment as a matter of law. Supreme Court and Fifth Circuit cases have held that another political body, such as a city council or civil service board, may provide meaningful review of a decisionmaker's actions. In *City of St. Louis v. Praprotnik*, a plurality of the Supreme Court found that if a city official's actions were subject to review procedures, there was not a complete delegation of power, and the city therefore could not be subject to *Monell* liability.[124] The *Praprotnik* plaintiff was a municipal employee who was transferred and subsequently laid off from his job with the City of St. Louis.[125] The plaintiff sued the municipal officers responsible for his transfer and layoff, alleging they had retaliated against him for exercising his First Amendment rights.[126] The Supreme Court held that the city did not have *Monell* liability, as the municipal officers who transferred the plaintiff and laid him off were not final policymakers because a civil service commission reviewed the decisions.[127]

---

[123] *See Gelin v. Housing Auth. of New Orleans*, 456 F.3d 525, 531 (5th Cir. 2006). The Plaintiff argues in his opposition to the motion for summary judgment that the review of his termination decision was not meaningful because the Civil Service Board denied him back pay. R. Doc. 64. The Plaintiff makes no claim for pack pay in his amended complaint. R. Doc. 61. Furthermore, the Plaintiff made a claim for back pay with the Kenner Civil Service Board, which was rejected based on the provision of the City Charter that provides "all monies earned by [the] appellant during the period of absence from the City payroll . . . shall be deducted in computing the amount of the back-pay award." R. Doc. 64-3. The Plaintiff appealed this decision to the Louisiana Fifth Circuit Court of Appeal, but his appeal was rejected because his request for rehearing or reconsideration of the Board's decision was untimely. *See Metzler v. City of Kenner*, 194 So. 3d 634 (La. Ct. App. 5 Cir. 2016). The Plaintiff, therefore, was provided meaningful review of this claim.
[124] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 128–29 (1988).
[125] *Id*. at 114–116.
[126] *Id*. at 115–16.
[127] *Id*. at 129–30.

A recent Fifth Circuit case, *Advanced Technology Building Solutions, LLC v. City of Jackson, Mississippi*, reaffirmed the Circuit's previous holdings that "[r]eview procedures are relevant to show someone 'is *not* a final policymaker.'"[128] In *Advanced Technology*, the plaintiff brought an action under Section 1983 against the City of Jackson, alleging the mayor retaliated against him for exercising his First Amendment rights.[129] The court held the mayor was not the final policymaker for the purposes of Section 1983 liability because the city council had final right of review of the mayor's decisions.[130]

Consistent with this proposition, the *Advanced Technology* court cited *Worsham v. City of Pasadena*, in which the mayor was held not to be a final policymaker for the purposes of *Monell* liability because the city council provided meaningful review of the mayor's decisions.[131] In *Worsham*, local law provided an avenue for appeal to the city council to review termination decisions.[132] Like the Plaintiff in this case, the plaintiff in *Worsham* appealed his termination, and was reinstated.[133] The court concluded the city was not liable for the actions of the officials because "the existence of [a] meaningful review by the City Council indicates that the city officials who discharged Worsham were not . . . final policymakers."[134] Likewise, in *Trosclair v. Westwego City*, the Fifth Circuit held that the Westwego Civil Service Board, not the mayor, alderman, or chief of police, was the final policymaker for the purposes of *Monell* liability.[135] The civil service board in

---

[128] 817 F.3d 163, 167 (5th Cir. 2016) (quoting *Bolton v. City of Dall.*, 541 F.3d 545, 550 n.4 (5th Cir. 2008)).
[129] *Advanced Tech. Bldg. Sols., LLC*, 817 F.3d at 164–65.
[130] *Id.* at 166.
[131] 881 F.2d 1336, 1340–41 (5th Cir. 1989).
[132] *Id.* at 1340.
[133] *Id.* at 1340–41.
[134] *Id.*
[135] 77 F.3d 477 (5th Cir. 1995).

*Trosclair* was authorized to make rules regarding employment and to review adverse employment decisions, just as the Kenner Civil Service Board is.[136]

In this case, the Kenner Civil Service Board has the power to review adverse employment decisions affecting any civil service employee.[137] It is undisputed that the Plaintiff in this case enjoys civil service protection.[138] Indeed, the Plaintiff availed himself of this protection by appealing his termination to the Civil Service Board, and he was reinstated to his position. Even had the Plaintiff established that Mayor Yenni made the decision to terminate him, this single decision would not make Mayor Yenni a final policymaker, and would not subject the city to liability, because the Civil Service Board provides meaningful review of Mayor Yenni's decisions.[139] The Court finds as a matter of law that the Kenner Civil Service Board is the final policymaker of the City of Kenner with respect to termination of employees. As a result, the City is entitled to summary judgment that it is not subject to *Monell* liability as a result of Mayor Yenni's actions with respect to the Plaintiff's termination.

Accordingly, the Defendants' motion for summary judgment with respect to the Plaintiff's claims against the City of Kenner for municipal liability under Section 1983 based on its liability for the actions of Mayor Yenni, Aimee Vallot, and Richard Walther is granted.

---

[136] *Id.*
[137] R. Doc. 72-2 at 3–4.
[138] R. Doc. 43-30 at 1, ¶ 1; R. Doc. 51-39 at 1, ¶ 1.
[139] *See Pembaur*, 475 U.S. at 483.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment filed by Defendants Mayor Yenni and the City of Kenner be and hereby is **GRANTED**. The remaining claims of the Plaintiff are dismissed with prejudice.

**New Orleans, Louisiana, this 11th day of October, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**